There's a little change in the seating, I guess. Call up 14-1533, Align Technology versus ITC. You can pronounce your name before I botch it. I will do. It's Mr. Timothy. Thank you. Chief Jack Frost, and may it please the Court. The International Trade Commission correctly concluded that Section 337's prohibition on encompasses electronic transmission of the accused's digital products, and was correct to stop that infringing conduct. This determination deserves this Court's deference. The Commission, however, made two errors of law on issues of first impression. First, the Commission adopted an artificial and narrowing construction of the term importation. The Supreme Court and this Court have instructed… Can you explain, I really am having a hard time with your position that importation can cover actions that occur after the article has entered the United States. Where do you find that in Cunard or Field? How can you make that contention? Your Honor, both Cunard and Field and Company have spoken about importation as constituting the bringing of the product within the jurisdiction of the United States. And in Cunard specifically, the Court said that the products were imported when they were brought into ports and harbors. So the process of importation, now, is the bringing of a product into the United States, which begins, obviously, abroad. The product traverses the territorial waters, but it has to be brought into the United States. So with the ships, the product is being brought not when it crosses territorial waters, but the process of importation is complete when the product arrives on the shore. Similarly, with the electronically transmitted product, the process of importation is not stored or saved on a computer or server. So that process of storing or saving an electronic digital product is the necessary final step in the process of importation. But it's an additional step. I mean, and the Commission found that that went beyond the crossing of the borders, did it not? The Commission suggested that. The Commission, in our view, didn't articulate what is the precise point at which it was measuring importation, although I think, in its brief, it did indicate that the crossing of the border would be the relevant point. And our view is the process, that is part of the process of importation. But the natural meaning of importation is that that process, you have to look at the completion of that process. When does that product actually arrive in the United States? When does it be in a position where it can be then transferred to a domestic consumer? Or is it in a position where it can be exported again from the United States? So in that sense, the nature of... Where do you get anything that says that importation includes readying something for exportation? We think the meaning of importation, the product can arrive and it can be then transferred to a domestic consumer. In the commodities case, the process of importation was finished when the product arrived at the bonded warehouse. It could then be exported. It could then be transferred and sold to a domestic consumer. But the point is for the court that the importation was completed when the product actually arrived in the United States. Can I ask you, just as a threshold, very pedestrian question, unless the government as well, is if we were hypothetically to conclude in the first case that the commission didn't have jurisdiction over electronic transmission in the first case, would that have any effect on what's going on here in the second appeal? Well, Your Honor, we certainly would urge you not to do that for reasons we've discussed. No, I understand. And it's just a hypothetical. But I don't want to have to worry... I mean, I just want to be clear on what... Your Honor, I think we'd have to... Understood. I think we'd have to consider that in this case, the product that is being transmitted is the electronic article. It's a digital article that's being transmitted electronically. If this court interprets Section 337 as not encompassing digital products, then I think that would also be dispositive of this argument. But with respect to the other cases, if we concluded otherwise with respect to the other issues that are left over that Judge O'Malley spoke a little about to your friend, those, I understand, would not have any impact on the outcome of this case, what we decide on the sub-issues in that case? That is right. I mean, as I understand Your Honor's question, the court's disposition with digital of whether or not Section 337 encompasses digital products would be dispositive with respect to this issue, but not necessarily the other ones. That is correct, Your Honor. So the other issues would only go to the Group 1 and 2 claims, and then these are the Group 3 and 4 claims. These are the Group 3... Exactly. Exactly, Your Honor. And because these claims, each of these claims are written to digital articles that... But also have a claim limitation that have to be stored on a computer-readable medium. That's why our position is that that limitation is being met here because the process of importation and its end includes the saving of these digital data sets on a computer-readable medium. So at that point, under the proper term, construction of a term of importation, that claim limitation is met, and there is no dispute on that. What additional relief would be available to you in that case, but does it relate only to the concurrent cases in the district court, or how would that affect, assuming that, hypothetically, in the first case, the commission is sustained? If the commission is sustained, then Your Honor is asking about the respect to just the Group 3 claims, or respect in general? In general. In general, why are you here? Is it to add support to the commission's thinking in general, to broaden the scope of the thinking, or is there actually an economic monetary consequence in addition? Your Honor, I think certainly our main aim is to stop the infringing importation, and that's what the commission has ordered. With respect to our cross-appeal, we actually argue that even though the commission was correct to enter the cease and desist order, that order should be broadened, and so that it would also cover products that infringe additional claims, or the patents that are owned by the law. That's my question. So what? What does that mean? Infringing one claim is infringement. How many are these additional claims? Is there a theory of additional monetary liability, or just the fact of infringement? Your Honor, I think it's both. I think it's the fact of infringement. So, obviously, a cease and desist order that's broader, that encompasses additional claims, then that would be more difficult to evade by modifications. There may also be monetary consequences, but that would be... I mean, for the purpose of this case, I don't want to speculate about that right now, because that would obviously be a question of a district court proceedings. But certainly, a broader cease and desist order would provide a line of greater relief. Look, if we were to agree with you, even if we were to agree with you, that 271G somehow was not just meant for district courts, and that it's available under 1337, the part that I'm having the hardest problem with, in terms of your argument on the 271G, is where does it say that 271G was ever meant to encompass cross-border activities? Your Honor, the 271G, there are clear statements in the legislative history that Congress did not want to limit Section 271G to the practice of a patent that occurs only abroad. And we had sites in our brief. The reason that was done is in order to comply with the United States international trade obligations. So, Section 271G... But the language of 271G is very clear, is it not? Your Honor, the language of 271G simply speaks about the use of a process that's patented, under U.S. patent. And so majority of the district courts that actually have considered that question have held that Section 271G is not limited to the practice of a process abroad, that in fact it would encompass situations where some of the steps of a claim are being practiced abroad, and the final step is being practiced in the United States. But it specifically refers to the importation of a good that was made from the practicing of the patented process. You can't import something if it's not already made, right? Your Honor, it refers to importation. It also refers, obviously, to use in the sale. And so there is a parallel with this Court's decision in Suprema. But in this case, what is being imported, our argument on the 271G is that the final product, where the final step is being practiced in the U.S., is a physical aligner. But what is being imported and what is contributory infringed are the digital data sets. So in that case, actually, we do have an article which is being imported, and that article then, even though it's contributory infringed under our theory of 271G combined with 271C infringement, that article is being imported under Section 337. And, Your Honor, I think with respect to Section 271G argument, our principal position is that, as this Court said in Suprema, the Section 337's term infringed does not refer, it is not limited to any specific subsection of Section 271. So looking at the plain language of Section 337, there is no reason to exclude infringement that is direct infringement defined under Section 271G from the scope of subsection B1 of Section 337. And, in fact, I also want to briefly address this Court's decision in Koenig because the Commission relied a lot on it. Koenig, in our view, was very different. In Koenig, the Court looked and said the defenses, which are enumerated in Section 271G, do not apply in Commission proceedings under subsection B2, but that is because Section 271G expressly says these defenses apply only for the purpose of Title 35. Right, but Koenig specifically says that 271G was enacted to provide quote, patent owners the new right to sue for damages and seek an injunction in federal district court, end quote. Isn't that what Koenig said? Judge Amali, that is absolutely correct. The Congress' principal aim in enacting 271G was to provide that right to sue and the remedy for the district court action. But there is no indication that Congress did not need, did not intend for Section 271G to also be available in the Commission proceedings under subsection B1. If Congress intended to make such an implied exception, it could have easily said so. And Congress also, as legislative history and the public will itself illustrate, Congress also was concerned about not diminishing any kind of remedies that the patent holder may have for the Commission proceedings. So that's why Congress both kept subsection B2, which obviously has an overlapping coverage with what we argue should be covered under subsection B1 and 271G, and also did not restrict subsection B1 to only the other modes of infringement enumerated in Section 271. How do you get around all the same Chevron arguments that you were arguing on the other side of this issue when you talk about the Commission's authority to interpret 1337 and the interaction between 1337 and 271G? Your Honor, we will agree that the Commission deserves deference with respect to those interpretations in general. We think that here the language of Section 337, subsection B1, the language of 271G, where there is no implied exception for infringement, direct infringement defined by 271G, we think that this Court is a matter of plain language, can reconcile those two provisions and actually adopt the interpretation that we argue. So now, in our view, this Court can construe interaction of sections 271G and subsection B1 under the first step of Chevron. And that's a different question from whether or not the term articles that infringe, which is in Section 337, is ambiguous. On that question, if the Court agrees that it is ambiguous on that question, then Chevron would require deference. Okay. You're into your rebuttal. Let me hear from the other side. Thank you, Chief Justice. Thank you. I might as well start with the 271G. In Kinnick, this Court gave the Commission Chevron deference to interpret the relationship between Section 271G and Section 337. The Commission did that here. Unlike, for example, Suprema, the Commission found here specific intent by Congress not to modify the Commission's existing remedy by the new remedy, Section 271G, that was provided in District Court, for which reason the Commission reasonably interpreted a statute not to incorporate Section 271G. With respect to the storage media claims, we've heard a lot about what the Commission seems like a new definition of importation, and we've heard a lot of reliance on the commodities export case, which is a bonded warehouse case. But the statute in that case, which is 19 U.S.C. Section 1555, which deals with storage of imported merchandise in a bonded warehouse, refers, quote, to a bonded warehouse for the storage of imported merchandise. It's not that the merchandise is imported after it leaves the bonded warehouse. It's imported upon entering the bonded warehouse, but then Congress provided for very specific schemes to enable the use of bonded warehouses for the purposes of facilitating international trade. What's your response to the argument by the friend on the other side? Which other side? The thing over there, yeah, that somehow you have to really look to see at what point is the article, assuming it's an article, in a position to be sold or used in the U.S., or in a position to be re-exported? How do you respond to that? Well, it's not a position that we supported. We, whether we're dealing with tangible goods or intangibles, apply a more straightforward measure of what's coming into the country. What's not coming into this country is a treatment plan residing on a computer-readable storage media. Like at least some members of the panel, I don't understand exactly what Align hopes to get from this, because they have many patent claims, including the 487 patent itself, for which the Commission found a violation. They were part of the Group 2 claims, but didn't recite the computer-readable storage media. So here, as a matter of infringement, the Commission found that what was being imported was not a treatment plan residing on a computer-readable storage media. And the Commission's non-infringement determination is reviewed for substantial evidence. And you won't see any storage media. They're not coming into the country. And if the Court doesn't have any other questions... Well, could you just respond to what I asked your friend about, which is whether or not, if hypothetically, you were to conclude in the first case that the IDC did not have jurisdiction over articles, over electronic transmission, whether that would resolve all of the issues in this case as well. Each of the subsets of Section 337A include the word articles. So if what's coming into the country are not deemed to be digital goods, are not articles, then it's my understanding that the Groups 3 and 4 patent claims would fall as well. There are some issues in the first case, which may well relate to this one. As I understand Alliance theory with respect to the Group 4 patent claims, there is a direct infringement by ClearCorrect US under 271G. And ClearCorrect Pakistan contributes to that infringement under 271G, not under 271A, through 271C. In that case, the arguments about a material for use in performing a patented process would appear to apply to the Group 4 patent claims in this appeal, which is something that we tried to explain in our brief. Notably, one other thing while we're talking about contributory infringement is these Group 3 patent claims, which call for a treatment plan residing on a computer-readable storage media, Align never argued contributory infringement by ClearCorrect Pakistan for purposes of infringing those claims. I'm not sure why that is. There doesn't appear to be anything to stop such a theory. And if Align had presented and preserved such a theory, it's likely that we would be talking about these Group 3 patent claims. You mean under 271C? Under 271C. We would be talking about these patent claims in the first appeal rather than the second one here. Thank you. The ClearCorrect intervenors agree with the Commission in its arguments concerning these Group 3 and Group 4 claims. But Align cannot prevail on those claims for two additional reasons stated in our brief. One, because those claims are invalid in light of prior art. And number two, because of a covenant not to sue that Align gave ClearCorrect back in 2011. Earlier I was talking about their claims and how we have the digital models. I think a little more description of the process is helpful to these two concepts. We have the digital model of crooked teeth. Are all of these claims encompassed in the 325? Pat? The claims of the 325? Your Honor, the 325 basically is what I described earlier. You take a scan of crooked teeth, position A. You have straight teeth, position B. Right, I understand. But there's an argument on validity as it relates to waiver. And clearly you asserted invalidity as to the 325. Yes, Your Honor. I do not believe there is any waiver assertion on the 325-1. I think the Commission was happy with that. The Commission, let's talk about waiver right now. What the Commission held is we waived our right to challenge the other patent claims because we incorporated by reference our same argument. I think that's an abuse of discretion because the prior art here is just razor thin. We're talking about two columns from two prior art patents and a couple of diagrams from one of them. So it really would add nothing to the debate for us to just cut and paste 40 times the same prior art. The prior art is very simple. Back in 1949, there was an orthodontist named Dr. Kiesling. Instead of taking a digital model of people's teeth, he did it in plaster. He would get the crooked teeth, position A, and then he'd saw off the teeth with the saw and put them in wax so he could move them around. And he would go from position A, crooked teeth, to Z, straight teeth, and then thermoform the plastic over it just like we do today. And then in column 3 of his patent he says, obviously if the space you need to move is too far to do it with one appliance, you go back and you make intermediate positions for additional appliances that people wear in their mouth. That was back in 1949. The only other reference that we have that we're relying on here today is one by Dr. Lemchin in 1989. And there he shows how to digitize Dr. Kiesling's method of using the plaster models. That's it. Those two references cover all of Align's patents here. The patent claims asserted here because they are so, like I said earlier, mind-numbingly repetitive. They're just using these models to make the appliance or not even going that far and just using the models to create the digital data. That's all. So all of the elements of the 325-1 are in the Kiesling-Lemchin references. It's very straightforward. I would ask the court to find that the 325-claim-1 is invalid as obvious and then remand back to the commission for more analysis on the remainder of the patent claims if the waiver finding is an abuse of discretion, which I think it is. The next item is the covenant not to sue. And here again, there was a waiver finding, but this one, kind of like the invalidity, is the height of form over substance. The commission found a waiver of the argument concerning the covenant not to sue because we didn't put enough words in our responsive pleading. We should have added more description of what our estoppel defense was. But the point of the matter here is that Align had enough information to take discovery, took depositions over the defense, drafted a motion for summary determination, as did Clercorac. The parties competed on this issue of covenant not to sue. Align won a victory on the merits on summary determination and then got a motion in limine excluding the evidence from the trial, the hearing, even as to our mens rea concerning contributory infringement. So there was no argument of surprise, no prejudice, and adding extra words to the responsive pleading and the affirmative defense would not have changed anything that happened. Now, on the covenant itself... Why, I mean, you say extra words. I mean, these are words that would actually say that you're asserting an affirmative defense based on unflagged license. I mean, it's more than just words. It's particular words, right? That affirmative defense was not asserted. Yes, I agree that there was discussion of it in discovery and there was actually a merits assessment of it, but there was an alternative finding by the ALJ. One was waived and the other was... even if it's not waived. True. But, Your Honor, I disagree with you about whether the pleading was sufficient because there was an estoppel defense pled. And we said there was stop from asserting the patent claims here. The 611 that they gave the covenant not to sue over is not in this case. So the estoppel defense went to the patents that they did assert in this case. Right, but did you say they were stopped because of an implied license? No, Your Honor, it was just a generic estoppel pleading. But what they did is what parties always do. There was no challenge to an insufficiency of the pleading. What they did is they just conducted discovery, and they got our documents, and they talked to our president about the defense, and they teed up a motion for summary determination, and they won it. I submit wrongfully, and the reason I submit wrongfully is because the 611 patent and their 880 patent have the identical specifications. By definition, it's the same inventive subject matter. And, Your Honor, we submit that we should have an implied license to do the 880, and we should again get a remand to see if that license extends to the other patents. Let me just ask you before you sit down a question about the 271G. Do you agree with your friend on the other side that in fact every court to have considered it says that cross-border practicing of a process is actionable under 271G? In other words, you can have some steps of the process outside the United States and some steps of the process inside the United States as long as something's imported in the middle? You mean it would not be actionable if part of the method patent occurs outside the continental United States? To process that, yes. I agree with that, yes. That what? I agree that there could be no liability for patent infringement for a method claim that is practiced partially outside the United States. Okay, thank you. Your Honor, several points. On the, with respect to the deference, I think, again, Kinnick is, obvious, Kinnick is distinguishable because Kinnick relied on the specific language of 271G which spoke only to defenses. And it also relied on the principle that the remedies under the commission, in commission proceedings, should not be diminished. Those two rationales would not apply here and so you would not get, I think, to the deference. With respect to the commodities case, our reliance on the commodities case is our reliance on Field & Company and our reliance on Cunard. These cases speak for the principle that the act of importation constitutes the bringing of a good into the United States with it then being made available to a consumer or can be disposed otherwise. That's why our position is that with respect to digital products, importation will include the act of saving or storing a digital file in a computer server in the United States. With respect to the covenant not to sue and the obviousness defense, for obviousness, we think the commission correctly found waiver to the majority of the claim. Also, clear correctness to show obviousness with respect to each claim and each dependent claim. Clear correctness has not done that analysis before the commission, has not done that analysis before this court and both our brief and the commission's brief demonstrated, in our view, quite convincingly. With respect to covenant not to sue, we think, again, the commission quite correctly found the waiver. The estoppel defense that clear correct in both was very different from the estoppel under this supposed covenant not to sue and also our view is that, as we explained in our brief, the patent with respect to which the letter not to sue was given is very different from the patents that are asserted over here. With respect to what kind of remedy we hope to and what we hope to achieve with respect to Group 3 claims is, again, as I mentioned, we would get the broader cease and desist order and also the other issue is that with respect to why we did not raise the contributor infringement as to those claims, we did not raise it before ALJ because the clear correct did not actually invoke the defense that these claims did not directly infringe by not meeting that claim limitation. So, therefore, we have not, as a backstop, invoked the contributor infringement and then we argued before the commission that waiver should be excused. The commission found otherwise. We didn't contest that finding. Your Honor, my time is up. I just have one question with respect to this court order, if I may, for the additional briefing. With respect to the briefing that the party should submit to SUPREMA, would that be limited to the impact of SUPREMA on the 1527 appeal or also on the 1533 appeal? And the reason I ask is because if it encompasses both appeals, it may be difficult for ALI to fully join the commission's response, obviously because of a different interest than the 1533. So, we should just do separate briefing here? Why don't we just do additional, then, on this case, five pages double spaced for each side on the impact of SUPREMA to this case, the second appeal before us. Is that okay? Same time limit of ten days. Absolutely, Chief Judge. Thank you very much for the clarification. I apologize, letter forms, thank you. The case is submitted, and that concludes the proceedings. Thank you. All rise.